UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID KENT CHAPLIN,

    Plaintiff,

v.

BETH A. ANDERSON, et al.,

    Defendants.

Case No. 18-12108
Honorable Laurie J. Michelson
Magistrate Judge Mona K. Majzoub

# OPINION AND ORDER ACCEPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [17] DISMISSING PLAINTIFF'S COMPLAINT [1]

David Kent Chaplin filed a *pro se* civil rights complaint asserting an array of federal and state law claims. Chaplin's rambling complaint, with attachments, is 203 pages long. It appears to allege misconduct in his state court Personal Protection Order (PPO) and divorce proceedings, as well as his criminal case. He names his step-daughter, ex-wife, the attorneys who represented them in the PPO and divorce proceedings, the state-court judge who presided over the proceedings, and an Oakland County deputy sheriff who was involved in Chaplin's criminal case. He alleges that they all conspired to violate his constitutional rights.

The Court referred the case to Magistrate Judge Mona K. Majzoub for all pretrial matters. The Magistrate Judge issued a Report and recommends summarily dismissing Chaplin's complaint. Believing his case should proceed, Chaplin objects.

For the reason stated below, the Court overrules the objections and accepts the Report and Recommendation dismissing Chaplin's complaint.

# I.

The facts of this case, as alleged in Chaplin's complaint, are as follows. *See Theile v. Michigan*, 891 F.3d 240, 243 (6th Cir. 2018).

Chaplin was married to Beth Anderson. (ECF No. 1, PageID.3.) Anderson's daughter, Sarahanne Anderson-Kevelin, along with Brian Kevelin, Heidi Kevelin, and Eugene Kevelin, (who are presumably relatives of Sarahanne's), coerced Anderson to accompany them to the Oakland County Sheriff's Department substation, where Anderson-Kevelin made conflicting statements to the police about being sexually assaulted by Chaplin. (ECF No. 1, PageID. 5.) Based on these statements, Detective Jon Peters of the Oakland County Sheriff's Department and another deputy encouraged Anderson-Kevelin to obtain a PPO against Chaplin. (*Id.*) Judge Karen D. McDonald of the Family Division of the Oakland County Circuit Court presided over the PPO proceedings. (ECF No. 1, PageID.5–6.) Anderson-Kevelin was represented at some of the PPO hearings by Michael Kelly or Jeffrey Worosz. (ECF No. 1, PageID.3.) Anderson-Kevelin provided false testimony in order to obtain a PPO against Chaplin. (*Id.*) She subsequently obtained renewals of the PPO based on false and conflicting information. And, says Chaplin, Judge McDonald violated his constitutional rights by refusing to allow him to testify or offer evidence at these hearings, and by renewing the PPO without any specific facts showing that Anderson-Kevelin was in danger of "immediate and irreparable injury, loss, or damage" as required by Michigan Court Rule 3.705(A)(2). (ECF No. 1, PageID.6–10.) Judge McDonald eventually granted Chaplin's motion to terminate the PPO. (ECF No. 1, PageID.78.)

Chaplin further alleges that his ex-wife, Anderson, and Garry Greenberg, Anderson's divorce attorney, violated his civil rights during the course of the divorce proceedings which were also presided over by Judge McDonald. (ECF No. 1, PageID.20–60.) Anderson and her attorney

filed numerous motions without providing notice to Chaplin, filed "fraudulent" statements, and did not advise the state court of a scheduling conflict Chaplin had with some of the proceedings causing the court to conduct several hearings in Chaplin's absence. (*Id*.) Among other allegations of misconduct, Chaplin alleges that Judge McDonald wrongly awarded his portion of the marital estate to Anderson and contends that some of his firearms were unlawfully seized as part of the divorce case. (*Id*.) He alleges that Judge McDonald knowingly permitted Anderson and Greenberg to engage in this fraudulent and perjurious conduct. (*Id*.)

Chaplin also claims that Peters obtained an arrest warrant based on false and perjured statements. (ECF No. 1, PageID.10.)

Chaplin alleges that the above actions violated his First Amendment right of access to the courts, denied him his right to equal protection, and violated his due process rights under the Fifth and Fourteenth Amendments. He further alleges that Anderson and Greenberg committed wire fraud and/or mail fraud, in violation of 18 U.S.C. §§ 1341 and 1343 and that other of the defendants violated various criminal and state law claims. Chaplin seeks declaratory and injunctive relief and monetary damages.

## II.

This Court performs a *de novo* review of those portions of the Magistrate Judge's Report and Recommendation to which the parties have objected. *See* 28 U.S.C. § 636(b). The Court need not and does not perform a *de novo* review of the report's unobjected-to findings. *Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Garrison v. Equifax Info. Servs., LLC*, No. 10-13990, 2012 WL 1278044, at *8 (E.D. Mich. Apr. 16, 2012).

Chaplin, who is currently incarcerated, was granted *in forma pauperis* status under 28 U.S.C. § 1915(a)(1). (R. 13.) Under the Prison Litigation Reform Act (PLRA), the Court is

3

required to *sua sponte* dismiss an *in forma pauperis* complaint before service if it determines that the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

## III.

Chaplin raises 16 objections to the Magistrate Judge's Report.[1] Many of the objections overlap so the Court will address them by topic for efficiency.

### A.

Chaplin's first five objections assert that his complaint, including the attached documents, make out a plausible claim upon which relief can be granted. (ECF No 18, PageID.270–274.) The Court disagrees.

Chaplin emphasizes the sheer volume of his exhibits and complaint. But the amount of information provided is not the yardstick. Regardless of length, a complaint must still allege a plausible claim for relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Indeed, as the Magistrate Judge highlights in her Report, even taking into consideration the information attached to and contained in the complaint, Chaplin's claims have no basis in law to proceed. Chaplin simply pointing to the record does not change that.

### B.

Objections six through eight disagree with the Magistrate Judge's analysis on state action.

Chaplin argues that the Magistrate Judge erroneously dismissed the § 1983 claims against Anderson, Greenberg, Anderson-Kevelin, Kelly, and Worosz because they are not state actors.

---

[1] Because Chaplin's last objection is cumulative—that, for all the reasons stated, the Report should be rejected—the Court will not address that objection individually.

Chaplin agrees that their individual actions – e.g., obtaining a PPO, working with divorce counsel, etc. – do not make them state actors. But he argues that these defendants are state actors under joint-action, conspiracy, or nexus theories. (ECF No. 18, PageID.275–280.) While Chaplin is correct that there are many avenues for establishing state action by seemingly private actors, Chaplin does not establish, nor can the Court find, that the pled facts plausibly support any of these legal theories of state action.

The "nexus" test requires "such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). Chaplin does not explain, nor can the Court contemplate, how the facts pled in the complaint would meet this test.

Joint action requires "both the public and private actors [to] share a common unconstitutional goal to deprive the plaintiff of his constitutional rights." *Canter v. Hardy*, 188 F. Supp. 2d 773, 796 (E.D. Mich. 2002) (citing *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1446–47 (10th Cir. 1995)). "Under this approach, state action may be found if a state actor has participated in or influenced the challenged action of the private party." *Id*. "Just as with the other tests for state action, the mere acquiescence of a state official in the actions of a private party is not sufficient." *Id*. Here, Chaplin does not plead facts that make it plausible that this test has been met. While Chaplin may have pled facts that made it plausible that the private actors acted jointly, there are no facts pled that make it plausible they acted jointly with the state actors with a common goal to violate Chaplin's constitutional rights.

Conspiracy between state and private actors is a similar theory of making private actors state actors, and what Chaplin appears to be focusing on. *Revis v. Meldrum*, 489 F.3d 273, 292

5

(6th Cir. 2007). But this requires sufficiently pleading that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiff of his constitutional rights, and (3) an overt act was committed. *Id.* at 290.

Chaplin does use the word "conspiracy" quite a bit in the complaint. And in his objections he makes general references to the parties "colluding." But none of the pled facts make it plausible that the private and state actors had and participated in a single plan to deprive Chaplin of his constitutional rights. Again, while Chaplin may have pled facts that made it plausible that the private actors conspired to violate his constitutional rights, there are no facts pled that make it plausible that the state actors joined in that conspiracy. At bottom, Chaplin's allegations about Judge McDonald and Detective Peters concern his disagreement with their decisions and that the proceedings did not go the way he wanted. (*See* ECF No. 1, PageID.3, 6–8, 11, 17, 26–32, 43, 49–52.) So even taking all of these factual assertions as true, and after reviewing all of the documents that Chaplin attached to his complaint, (most of which are transcripts from the various proceedings and represent the antithesis of a single conspiratorial objective), the Court cannot find a plausible argument that any state actor conspired with the private defendants to violate Chaplin's constitutional rights. Instead, the allegations support that Chaplin did not like the way he was treated by Judge McDonald and her rulings. And it appears that the extent of Peters' "fraudulent statements" are relaying what Anderson-Kevelin told him about the alleged abuse. (*See* ECF No. 1, PageID.82–84; ECF No. 1, PageID.120–122.)

These objections are overruled.

## C.

Chaplin's ninth objection is to the dismissal of the attorney-defendants. His precise objection is difficult to discern but appears to be that his claims against the attorneys should survive

because they have all committed misconduct: "Each attorney perpetrated in some instances the same crimes, but also different crimes, and the underlying elements of the crimes being different state and federal crimes." (ECF No. 18, PageID.281.)

But, as the Magistrate Judge found in her Report, a private party cannot sue to enforce criminal laws. *See Am. Post Workers Union, AFL-CIO v. Independent Postal System of America, Inc.*, 481 F.2d 90, 93 (6th Cir. 1973) ("'Equally important is the firmly established principle that criminal statutes can only be enforced by the proper authorities of the United States Government and a private party has no right to enforce these sanctions.'" (citation omitted)); *Associated Builders & Contractors v. Perry*, 16 F.3d 688, 692–93 (6th Cir. 1994) (private party lacks standing to compel the state to pursue criminal or civil actions).

This objection is overruled.

**D.**

Chaplin's tenth objection is to a footnote in the Report referencing *res judicata*. This reference pertained to the fact that Chaplin brought a virtually identical lawsuit against Defendants Anderson and Greenberg, in which he challenged the validity of the divorce proceedings. That case was dismissed for failing to state a claim upon which relief could be granted. *Chaplin v. Anderson, et. al.*, No. 5:17-cv-13139 (E.D. Mich. Dec. 12, 2017) (O'Meara, J.) (adopting report and recommendation of magistrate judge). Chaplin disagrees that *res judicata* applies to this case. But this is of no legal significance as the Magistrate Judge specifically stated that she was *not* going to address *res judicata* because she was dismissing the claims against Anderson and Greenberg on other grounds. So *res judicata* played no role in the Magistrate Judge's decision.

This objection is overruled.

7

**E.**

Objections 11–13 concern the Magistrate Judge's application of *Rooker-Feldman*.

After discussing judicial immunity and the 1996 amendments to § 1983 regarding certain types of claims that can be brought against judicial officers, the Magistrate Judge dismissed Chaplin's claims for declaratory and injunctive relief against Judge McDonald on the *Rooker-Feldman* doctrine. Declaratory relief against a judge is available in some circumstances. *See* 42 U.S.C. § 1983; *Ward v. City of Norwalk*, 640 F. App'x 462, 467 (6th Cir. 2016). But "abstention doctrines and Article III of the United States Constitution still serve to limit the availability of such relief." *Cooper v. Rapp*, 702 F. App'x 328, 333 (6th Cir. 2017). Article III's case-or-controversy requirement "operates to ensure that declaratory relief is available only when a live controversy continues to exist." *Ward*, 640 F. App'x at 468. And judges who are not adversaries in the state-court proceedings, but rather acted as a "disinterested judicial adjudicator, bound to decide the issues before him according to the law," (and not "as the enforcer or administrator" of a statute), are not amenable to a suit for declaratory relief under § 1983. *Cooper*, 702 F. App'x at 333–34. Judge McDonald was the "disinterested judicial adjudicator" and not an adversary in the state-court proceedings. So no case or controversy exists to permit a claim for declaratory judgment. *Id*.

Injunctive relief is also barred. Section 1983 permits injunctive relief against a judicial officer "unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Chaplin does not allege that Judge McDonald violated a declaratory judgment. "Nor did [he] demonstrate that declaratory relief was 'unavailable,' albeit, as explained above, [he is] not entitled to such relief." *Cooper*, 702 F. App'x at 334.

And irrespective of these judicial immunity issues, the Magistrate Judge was correct to bar the claims under *Rooker-Feldman*. "The *Rooker–Feldman* doctrine has evolved from two Supreme

Court cases which establish that 'lower federal courts lack subject matter jurisdiction to engage in appellate review of state court proceedings.'" *Smith v. Oakland Cty. Circuit Court*, 344 F. Supp. 2d 1030, 1056 (E.D. Mich. 2004) (quoting *Hood v. Keller*, 341 F.3d 593, 597 (6th Cir.2003)).

Chaplin argues that this doctrine does not apply because he does not challenge the merits of the state-court decisions, just the procedures. (ECF No. 18, PageID.284–287.) His argument relies heavily on *Catz v. Chalker*, 142 F.3d 279 (6th Cir. 1998), *overruled on other grounds as stated in Coles v. Granville*, 448 F.3d 853, 859 n.1 (6th Cir.2006). There, the court found that Catz's due-process claims did not implicate *Rooker-Feldman* as "Catz's due process allegation does not implicate the merits of the divorce decree, only the procedures leading up to it. For him to seek federal relief on this score need not be 'predicated upon a conviction that the state court was wrong' on the merits." *Catz*, 142 F.3d at 294 (footnote omitted).

But Chaplin cannot save his claims by trying to frame them as a procedural challenge. Indeed, the relief that Chaplin seeks belies that framing. He seeks declaratory relief directing Judge McDonald to void the divorce, reestablish his right to his firearms, terminate his PPO, expunge his record of the PPOs, and nullify the debt he owes Anderson. (ECF No. 1, PageID.61–66.) At bottom, he disagrees with the merits of and challenges those decisions. *See Mackey v. Berryman*, No. 17-CV-12359, 2019 WL 197000, at *6 (E.D. Mich. Jan. 15, 2019) (finding PPO issued by defendant judge was the true source of the injury in plaintiff's complaint and dismissing under *Rooker-Feldman* where plaintiff argued that the judge violated his constitutional rights by issuing the PPO improperly, without notice, without giving him an opportunity to be heard, out of political motivations, and in retaliation for his political activities) (citing cases)).

Either way, the claims against Judge McDonald must be dismissed.

These objections are overruled.

**F.**

Objection 14 appears to be an objection to the Magistrate Judge's application of *Heck* to Chaplin's claims against Peters, a detective at the Oakland County Sheriff's office. Chaplin argues that the Magistrate Judge misconstrued his claims in finding they were barred by *Heck*. (ECF No. 18, PageID.287.)

In *Heck*, the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Id*. at 486. The Magistrate Judge found that, to accept as true Chaplin's factual allegations that Peters obtained a warrant to arrest Chaplin by making false and perjured statements, "would necessarily imply that his conviction for criminal sexual conduct is invalid and *Heck* and [*Morris v. City of Detroit*, 211 F. App'x 409, 411 (6th Cir. 2006)] specifically bar such a result." (ECF No. 17, PageID.265.)

One difficulty here is trying to discern the exact nature of Chaplin's claim against Peters. But the essence of Chaplin's allegations appear to be that he did not do what Peters alleged in the warrant. And if that is true, the Magistrate Judge was correct in finding this would invalidate Chaplin's conviction. *See e.g., Hancock v. Word*, 27 F. App'x 256, 257 (6th Cir. 2001) (applying *Heck* to false arrest claim); *Schilling v. White*, 58 F.3d 1081, 1086 (6th Cir.1995) (finding "[t]he fact that a Fourth Amendment violation may not necessarily cause an illegal conviction does not lessen the requirement that a plaintiff show that a conviction was invalid as an element of constitutional injury."); *Vickers v. Donahue*, 137 F. App'x 285, 290 (11th Cir. 2005) (finding that

Fourth Amendment § 1983 claim premised on officer providing false information in affidavit to secure an arrest warrant was barred by *Heck* because "the factual basis for [the plaintiff's] claim . . . inevitably undermine[s] his conviction.").

This objection is overruled.

### G.

Chaplin's fifteenth and last substantive objection is to the dismissal of his claims based upon criminal and state civil law.

As the Court previously stated, a private party cannot bring claims under criminal laws. Further, in a case with no diversity of citizenship, the Court has authority to decline to exercise supplemental jurisdiction over the state-law claims, especially if they are the only claims that remain. *See* 28 U.S.C. § 1367(c); *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996).

This objection is overruled.

### IV.

Based upon the foregoing, the Court ACCEPTS the Magistrate Judge's Report and Recommendation and DISMISSES Chaplin's complaint for failure to state a claim as required by 28 U.S.C § 1915(e)(2)(B)(ii). Chaplin's pending motions for declaratory relief, injunctive relief, and relief from judgment (ECF Nos. 4–6) are DENIED AS MOOT.

IT IS SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Date: March 15, 2019

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel of record and/or pro se parties on this date, March 15, 2019, using the Electronic Court Filing system and/or first-class U.S. mail.

s/William Barkholz<br>Case Manager